ARTHUR MURRAY, INC. *v.* Lorena PARRIS

5-4241                      420 S. W. 2d 518

Opinion delivered November 13, 1967

*John C. Ward,* for appellant.

*Donald Ryan,* for appellee.

Carleton Harris, Chief Justice. From September, 1963, to January, 1965, Lorena Parris, appellee herein, ·entered into seven separate contracts for dancing instruction with Samuel Osborne, who operated a dance ·studio in Little Rock, using the Arthur Murray course ·of instruction under a licensing agreement. Mrs. Parris paid a total amount of $7,745.92 for the instructions contracted for, a part of this sum constituting an advance payment for future lessons. In January, 1965, Mrs. Parris, asserting matters that she felt constituted a breach of contract, directed a written demand to the New York office of Arthur Murray, Inc., appellant herein, for reimbursement of 415½ unused hours at $10.00

per hour, or a total of $4,150.00. In April, 1965, after correspondence between appellee's attorney and the New York attorney of Arthur Murray, Inc., Murray released $2,000.00, which actually belonged to Osborne, but was being held by Murray in escrow. This money was paid to the attorney for Mrs. Parris. Subsequently, appellee filed suit against both appellant and Samuel Osborne for $2,450.00, such sum representing the cost of the unused lessons, less the amount paid from Osborne's escrow account. On trial, the jury found in favor of Mrs. Parris against both Osborne and appellant, and from the judgment entered in accord with the verdict, the latter brings this appeal.[1] For reversal, it is first urged that the court erred in refusing to grant appellant's motion for summary judgment.

The evidence reflects that counsel for appellee, on April, 1965, wrote Mr. Paul Coonrod, general counsel and assistant secretary for Arthur Murray, Inc., advising as follows:

"Mrs. Parris has agreed to settle this matter with you on the following basis:

(A) Arthur Murray and Sam Osborne will refund a total of $4,150 to Mrs. Parris all of which is to be paid to this office.

(B) Two thousand to be paid immediately and the remaining balance of $2,150.00 to be paid at this office at the rate of $100.00 per month.

(C) The first $100.00 payment to be due and payable on or before the 15th day of each following month, the last payment to be in the amount of $50.00.

---

[1] The record as to Osborne is here confusing. On Page 83 of the transcript, there is a recitation that Osborne, "not appearing or offering any defense, the court has entered a default judgment against him for the amount of $2,450.00, as prayed by the complaint." The judgment itself recites that the court "directed a verdict in the amount of $2,450.00 against defendant Samuel L. Osborne."

If you have any questions regarding this settlement please contact me. Otherwise, I will expect your check for $2,000.00 by return mail.''

Coonrod, on April 13, replied to the letter as follows:

''To clarify this matter I wish to advise you that Mr. Sam Osborne, the licensee of the Little Rock Studio, has agreed to make the settlement of $4,150.00 to Mrs. Parris.

We are advancing Mr. Osborne the sum of $2,000.00 which he has on deposit in escrow with us in order to enable him to complete the settlement terms with you.

Accordingly, any note or agreement providing for the payment of the balance of $2,150.00 to Mrs. Parris will be executed by Mr. Osborne alone and we will not be a party to such an agreement.

Please confirm your understanding of the above as soon as possible so that I may forward you the check for $2,000.00.''

Thereafter, on April 15, counsel for appellee replied:

''As set out in your letter of April 13, 1965, I understand that Mr. Sam Osborne the licensee of the Little Rock Arthur Murray Studio is the one who has agreed to make a settlement of this matter for $4,150.00 and that you are advancing Mr. Osborne $2,000.00 by return mail.''

On April 20, Mr. Coonrod then acknowledged receipt of this letter and stated:

''In accordance with your request, I am enclosing herewith our check payable to your order as attorneys in the sum of $2,000.00.''

After the filing of the suit, Arthur Murray, Inc., moved for summary judgment, supported by the four letters herein mentioned, and an affidavit by Mr. Coonrod. It was asserted that there was no material issue of fact, the letters and affidavit reflecting that Mrs. Parris had entered into an accord and satisfaction with Murray. In opposing the motion, counsel for appellee likewise executed an affidavit.

We cannot agree that the letters and affidavit established an accord and satisfaction, and we think a fact question was presented. Mr. Coonrod clearly wrote that Mr. Osborne had agreed to make the settlement, and that appellant was advancing Osborne money (which actually belonged to Osborne) in order to enable the latter to complete the settlement. Further, it is pointed out that Murray "will not be a party to such an agreement." Counsel for appellee then replied that he understood that Osborne was the one who had agreed to make a settlement, and the company was advancing Osborne the $2,000.00. In view of the other statements made in the letters, it is apparent that this $2,000.00 was to assist the licensee in furtherance of his settlement. It will be noted that none of Coonrod's letters state that the $2,000.00 is being sent on the condition that appellant be released from possible liability; nor is there any statement in the letters written by counsel for appellee that can be construed as definitely releasing or discharging Arthur Murray, Inc., from any liability. There may well have been grounds for appellant to assert accord and satisfaction, but there were also grounds for appellee to contend otherwise. In other words, the letters, taken together, presented a question of fact concerning what had been agreed upon, and this was therefore a matter to properly be passed upon by the jury.

Appellant contends that there was no substantial evidence to the effect that Osborne breached the contract with Mrs. Parris. Without going into detail, let it be said that there was ample evidence to present a jury question on this point, including the fact that when Mrs.

Parris began her dancing lessons, there were six or seven instructors, and in 1965 (when she ceased taking lessons), there was only one instructor qualified to teach the higher rated students. According to Mr. Hillman Johnson, a former instructor at the studio, but now employed by Southwest Truck line of Dallas, that instructor was a disabled veteran, and was suffering from arthritis. Mr. Coonrod testified that, under appellant's agreement with Osborne, the corporation was permitted to make refunds (from the escrow account). Of course, it would appear that appellant recognized the justness of appellee's demand for refund, since it paid to her the full amount in Osborne's escrow account.

It is next asserted that the trial court erred in refusing to direct a verdict for appellant, it being contended that there was no testimony which made a jury question on the issue of whether Osborne was a direct agent of Arthur Murray, Inc. We cannot consider this contention, for, though a motion for directed verdict was made at the conclusion of appellee's evidence (and denied), this motion was not renewed at the conclusion of all the evidence. In *Granite Mountain Rest Home* v. *Schwarz, Admr.*, 236 Ark. 46, 364 S. W. 2d 306, we said:

"We are unable, under our established procedure, to consider the first point for reversal, *viz.*, that the court erred in not directing a verdict for appellant. A motion for directed verdict was made by appellant at the conclusion of plaintiff's (appellee's) testimony, and was denied by the court. Whether this action by the trial court was correct is of no moment, for upon the motion being overruled, appellant proceeded to offer its evidence. We have held that when one proceeds, after the denial of such a motion, to introduce proof, he waives the error of the court in failing to grant same. [Citing cases.] * * As stated in Wigmore on Evidence, Volume 9, Third Edition, one 'cannot take advantage of the judge's *original erroneous refusal* to direct a verdict for insufficiency at the time of the first motion if he does *not renew* the motion at the close of all the evi-

dence.' The reasoning employed, is, of course, apparent, for if one has waived his original motion, and does not renew same, there is nothing to be passed upon by the court at the conclusion of the evidence. No error could have been committed by the court at this point—for nothing was presented.''

We also held in *Granite Mountain Rest Home* v. *Schwarz, Admr., supra,* that where no motion for an instructed verdict was requested, the point could be raised in a motion for a new trial questioning the sufficiency of the evidence, but that was not done here (nor there).

It might be added that appellant requested an instruction (which was given) relating to what appellee must prove in order to establish a breach of contract. Since the complaint against Osborne had already been disposed of by the court's action prior to the case going to the jury, this instruction could only have been given on behalf of Murray. Of course, the liability of appellant on the agency question was predicated upon the acts of Osborne, and appellant's sole interest in emphasizing that Mrs. Parris must prove that the contract had been breached by Osborne was due to the fact that appellant was being charged as the principal. As stated in *Granite Mountain*, this action waived the question of the sufficiency of the evidence on that point.

Other requested instructions by appellant related to the question of third party beneficiary, and accord and satisfaction. The instruction relating to third party beneficiary was modified by the court and given, without objection by appellant. This instruction reads as follows:

''If you find, by a preponderance of the evidence, that the contract provided for refunds to be made by Arthur Murray Incorporated in excess of the amount already paid to plaintiff, and that a further refund is

justified under the terms of the contract, then you may render a verdict in favor of the plaintiff.

"If you find, by a preponderance of the evidence, that the terms of the contract do not contemplate refunds in excess of the amount already paid to plaintiff, or that a further refund would not be justified in this case, then plaintiff is not entitled to recover under this contract."

The contract referred to in this instruction is the one between Murray and Osborne.

Appellant and Osborne had entered into a so-called "licensing" agreement, which provided that Osborne would, on each Friday, pay to Murray 3% of licensee's (Osborne's) gross receipts for the preceding calendar week, which would be held by the licensor (Murray) in escrow.[2] The agreement provides that Murray may invest this money in any type of bond, indenture, note or other certificate of indebtedness that it deems safe, and shall not be liable to licensee for errors of judgment or anything other than bad faith or fraud in the handling of the fund. Under the agreement, this 3% is paid until the amount reaches $25,000.00, and the instrument further provides that if this fund is depleted by payments made by Murray (as will be hereafter mentioned), payments to the licensee shall be resumed until the fund again reaches that amount. Among other purposes for which this fund could be used, we find the following:

"The Licensee [Osborne] agrees that he will make refunds to his pupils for unused lessons, at the request of any pupil for a refund when and if a refund is justified.

---

[2]For compensation, Section 2 provides that the licensee shall shall pay the licensor, so long as the dancing school is operated, 5% of the gross receipts for the preceding calendar week.

"In the event that the Licensee fails to make such justifiable refund to any of his pupils, the Licensor [Murray], if convinced that such refund is justified, is authorized to make such reasonable refund as Licensor deems proper, and charge the amount so paid to the Licensee, and Licensee agrees to reimburse Licensor upon demand or Licensor may charge such payment against the deposits provided for in Paragraph 6. Licensor agrees to endeavor to keep such refunds to a minimum."

Appellant, from this clause, apparently recognizes that justifiable demands for refund might be made which are in excess of the amount of money which has been paid in by the licensee (here, Osborne), for the quoted language states that Murray may make a refund, and *charge the amount* to the licensee. Of course, if Murray only had in mind making refunds to pupils in an amount not to exceed the funds held in escrow, there would be no need to charge the licensee with anything, for it (appellant) would simply pay only up to the amount he had on deposit.

This was a general verdict, and we do not know the basis upon which the jury reached this decision. Though arguing that it is liable neither under the theory of agency nor the theory of third party beneficiary, it is interesting to note that appellant recognizes that it can be liable to the pupils of licensee. In Section 6 we find the following language:

"* * * Upon termination of this agreement [between Murray and Osborne] (or any renewal or extension hereof) or the termination of the relationship contemplated hereby between Licensor and Licensee (or their respective assigns) or in the event that Licensee's school shall be permanently discontinued, Licensor shall account to Licensee within two (2) years after the happening of either of such events for the fund remaining in Licensor's hands, if any, and shall pay to Licensee the amount remaining on hand after deducting: (1) all

debts and obligations due Licensor; (2) all sums due Licensor or Licensor's other Licensees for redemption of lessons sold by Licensee to Licensee's pupils; (3) *any payments Licensor may have made or expenses or liability incurred as a result of claims or litigations against Licensor arising out of Licensee's conduct of the enterprise contemplated hereby.* [Our emphasis.]''

It makes but little difference what we call the relationship between these three parties; the fact remains that appellant recognized that, under its agreement with Osborne, it could become liable, *inter alia*, because of refunds due pupils for unused lessons, and the jury found such liability.

For the reasons herein set out, the judgment is affirmed.

It is so ordered.

GEORGE ROSE SMITH and BROWN, JJ., dissent.

GEORGE ROSE SMITH, Justice, dissenting. I think that Murray's motion for a summary judgment should have been granted, on the basis of the letters that were exchanged between the lawyers representing the parties.

On April 8, Mrs. Parris's attorney offered to settle the case if ''Arthur Murray *and* Sam Osborne will refund a total of $4,150 to Mrs. Parris,'' with $2,000 to be paid in cash and the rest in monthly installments of $100. Murray promptly rejected that suggestion of joint liability by making this counteroffer: ''Mr. Sam Osborne has agreed to make the settlement of $4,150.00 to Mrs. Parris. We are advancing Mr. Osborne the sum of $2,000.00 which he has on deposit in escrow with us in order to enable him to complete the settlement terms with you. Accordingly, any note or agreement providing for the payment of the balance of $2,150.00 to Mrs. Parris will be executed by Mr. Osborne alone *and we will not be a party to such an agreement.* Please confirm

your understanding of the above as soon as possible so that I may forward you the check for $2,000.00.''

By return mail Mrs. Parris's lawyer hastened to say: "I understand that Mr. Sam Osborne . . . *is the one* who has agreed to make a settlement of this matter for $4,150.00." (My italics throughout.) Upon that assurance Murray's counsel forwarded a check for $2,000.

Mrs. Parris now contends that the exchange of letters may be construed to mean that the parties did·not intend for Osborne alone to be responsible for paying the remaining $2,150 that was involved in the settlement. In other words, the argument is made that Murray would still have forwarded the $2,000 even if Mrs. Parris's final letter had said: "We will accept your offer of a check for $2,000, but please be warned that we are not releasing you from liability and will expect you to pay the remaining $2,150 if Osborne fails to do so." In my opinion the exchange of correspondence is not fairly susceptible of the interpretation that the majority are placing upon it. I would reverse and dismiss.

BROWN, J., joins in this dissent.